UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIM T.,

      Plaintiff,      **DECISION AND ORDER**

   v.

               1:20-CV-01237 EAW

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Kim T. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, the Commissioner's motion (Dkt. 14) is denied, and the case is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed her application for DIB on October 18, 2016. (Dkt. 11 at 25, 165-66).[1]  In her application, Plaintiff alleged disability beginning May 13, 2016. (*Id.* at 25, 165).  Plaintiff's application was initially denied on May 5, 2017.  (*Id.* at 25, 90-95).  A video hearing was held before administrative law judge ("ALJ") Roxanne Fuller on February 26, 2019.  (*Id.* at 46-72).  Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Falls Church, Virginia.  (*Id*. at 25).  On July 9, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 25-38).  Plaintiff requested Appeals Council review; her request was denied on July 9, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-11).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2021. (Dkt. 11 at 27). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 13, 2016, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: cervical radiculopathy, degenerative disc disease, migraines, depression, anxiety, and borderline personality disorder. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of fibromyalgia was non-severe. (*Id*. at 28).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). The ALJ particularly considered the criteria of Listings 1.04, 11.00, 12.04, 12.06, and 12.08 in reaching her conclusion. (*Id.* at 28-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> She can occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, crouch, kneel and crawl; frequent reaching and overhead reaching with both arms; and frequent, but not constant, handling objects, fingering, and feeling with both hands; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; and occasional exposure to unprotected heights; able to perform routine and repetitive tasks.

(*Id.* at 30). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of garment sorter, routing clerk, and cafeteria attendant. (*Id.* at 37-38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 38).

## II.   Remand of This Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ improperly assessed the opinion of Plaintiff's treating chiropractor; (2) the ALJ failed to close evidentiary gaps in the record relating to mental health evidence, and (3) the ALJ failed to develop the record regarding Plaintiff's fibromyalgia.  (Dkt. 12-1 at 15-30).  For the reasons explained below, the Court finds that the ALJ erred in her duty to develop the record to obtain evidence relating to Plaintiff's mental health, and therefore the mental RFC is not supported by substantial evidence.  This error requires remand for further administrative proceedings.

### A.   Determination of Mental RFC

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  "[T]he ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial

evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). "Where, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alteration, and citations omitted). In particular, a formal medical opinion is not necessary "when the record is clear and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) (citation omitted).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history,

the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d at 7 n.5  (internal quotation marks and citation omitted).

Here, Plaintiff argues that the lack of any medical opinion evidence regarding Plaintiff's mental limitations triggered an obligation by the ALJ to further develop the record, warranting remand.  On these facts, the Court agrees.

In her decision, the ALJ found Plaintiff's impairments of depression, anxiety, and borderline personality disorder to be severe.  (Dkt. 11 at 27).  The ALJ considered the severity of Plaintiff's mental impairments in connection with her assessment of whether Plaintiff satisfied Listings 12.04, 12.06, and 12.08.  (*Id*. at 28).  The ALJ found Plaintiff to have a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.  (*Id.* at 29).

The ALJ also addressed the medical records concerning Plaintiff's mental health treatment.  Specifically, she noted Plaintiff's treatment by Maria Nickolova, M.D., a psychiatrist.  Dr. Nickolova diagnosed Plaintiff with major depressive disorder recurrent moderate and generalized anxiety disorder.  (*Id.* at 31, 580-654).  The ALJ also noted that Plaintiff was admitted to the Erie County Medical Center on September 5, 2016 for suicidal thoughts and an attempted overdose.  (*Id.* at 31, 329-348).  Plaintiff was discharged on September 8, 2016, with diagnoses of chronic pain, depressive disorder not otherwise specified, and anxiety disorder not otherwise specified.  (*Id.* at 31, 347-47).  Plaintiff began seeing Monica Reeves, LCSW-R on September 13, 2016, for individual counseling.  (*Id.*

at 31, 890-922).  On December 5, 2016, Plaintiff was treated by Sumit Grover, M.D. for

chronic depression and anxiety, panic attacks and chronic pain, and reported having PTSD.

(*Id.* at 33, 580-654).

The ALJ summarized the evidence relating to Plaintiff's mental impairments as

follows:

> In terms of mental functioning, the claimant was diagnosed with major
> depressive disorder recurrent moderate, generalized anxiety disorder, and
> borderline personality disorder, such as in April 2017 (Ex. 21F/5).  The
> claimant was hospitalized for an intentional overdose in September 2016
> because she could not cope with decreased pain medications (Ex. 3F/16, 19).
> However, the record shows that the claimant's mental status findings were
> generally mild and improved with treatment.  For example, in September
> 2016, Monica Reeves, LCSW-R noted that the claimant had disheveled hair,
> no makeup, frazzled appearance, was cooperative and sad, and had euthymic
> and sad mood during the encounter (Ex. 31F/20).  However, in October 2016,
> Ms. Reeves noted that the claimant was appropriately groomed and
> comfortable, was cooperative and appropriate, mood was euthymic during
> the encounter, and attention and concentration were normal (Ex. 31F/26).
> This is generally consistent with Dr. Grover's findings in December 2017
> (Ex. 31F/17).  The record indicates some noncompliance with medications,
> as the claimant would discontinue medications on her own because she did
> not feel they were effective (Ex. 12F/71, 74).  Nonetheless, the claimant did
> not require any further crisis management, emergency, or inpatient treatment
> for her mental impairments.  Although the claimant testified that she was no
> longer receiving mental health treatment due to expense, the record does not
> show that the claimant was denied free or low cost medical care.  Rather, the
> record shows that she underwent elective procedures in February 2018 (Ex.
> 17F/3), which she testified she paid for from her divorce settlement.  The
> claimant's clinicians did not express any overt concerns.  The record does
> not show work-precluding limitations due to the claimant's mental
> impairments.

(*Id.* at 35).

In her decision, the ALJ discussed the medical opinion evidence in the record.  All

three of the medical professionals providing opinion evidence related to Plaintiff's physical

limitations.  Specifically, the record contained a report from Keith Conover, D.C.,

Plaintiff's treating chiropractor, who opined that Plaintiff could lift and carry one to two pounds, stand and/or walk up to six hours a day, sit less than six hours a day, would need to change positions due to pain, and could not push or pull due to cervical radicular symptoms. The ALJ gave Dr. Conover's opinion ALJ little weight. (*Id.* at 35). The ALJ also considered the results of an internal medicine consultative examination conducted by Samuel Balderman, M.D., on March 20, 2017. (*Id.* at 36). Dr. Balderman opined that Plaintiff had mild limitations for frequent changes of positions and repetitive bending and lifting, and the ALJ gave this opinion some weight. (*Id.*). Finally, the ALJ considered the opinion of a state agency medical consultant, R. Abueg, M.D., who opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours, sit for six hours, and frequently stoop and crawl. (*Id.*). The ALJ gave Dr. Abueg's opinion some weight. Notwithstanding the lack of medical opinion evidence regarding Plaintiff's mental functioning, the ALJ formulated the RFC and explained that due to "depression, anxiety, and borderline personality disorder, [Plaintiff] is able to perform routine and repetitive tasks." (*Id.*).

The record does reflect that at the hearing, the ALJ took steps to develop the record. She asked counsel whether any documents were outstanding that needed to be part of the record and counsel asked for assistance in obtaining the records from Dr. Grover. (Dkt. 11 at 48-49). In addition, the ALJ questioned Plaintiff about her mental limitations. *See Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (duty to develop record includes "the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity" (citation

omitted)).  However, the ALJ's duty to develop the record does not apply only at the administrative hearing.  The ALJ is required to "develop a claimant's complete medical history," including by "obtain[ing] a claimant's medical records and reports," *id.* at 261 (citations omitted), and may include a need to obtain medical opinion evidence, *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018).

While in some cases, the ALJ retains the discretion to make a common sense determination of Plaintiff's RFC, this is not that case.  It is true that that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]"  *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (quotation and citation omitted). However, "the leeway given to ALJs to make common sense judgments does not typically extend to the determination of mental limitations, which are by their very nature highly complex and individualized."  *Lilley,* 307 F. Supp. 3d at 161 (quotations omitted); *Merriman v. Comm'r of Soc. Sec.,* No. 14 Civ. 3510 (PGG/HBP), 2015 WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) ("[T]he duty to develop the record is particularly important where an applicant alleges [s]he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." (quotations, citation, and alteration omitted)).  This is because "the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation" and accordingly "[w]here serious mental illness is at issue, the ALJ may not make . . . seemingly common-sense judgments about a claimant's abilities."  *Stoeckel v.*

*Comm'r* of Soc. Sec., No. 18-CV-1475-FPG, 2019 WL 5445518, at *3 (W.D.N.Y. Oct. 24, 2019); *James R. v. Comm'r of Soc. Sec.*, No. 18-CV-06497-FPG, 2021 WL 3361161, at *3 (W.D.N.Y. Aug. 3, 2021) ("The ALJ could not assess the scope of Plaintiff's mental impairments solely through her own common sense and lay judgment.").  Indeed, in the case of mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018).

Here, the ALJ found at step two that Plaintiff had multiple severe mental impairments, and the ALJ concluded that the mental health limitations were sometimes "moderate."  Diagnoses related to Plaintiff's mental impairments were corroborated in the records of several treating providers and an overdose requiring hospitalization was documented.  On this record, the ALJ was not permitted to rely on her own lay assessment of the medical evidence to assess Plaintiff's RFC.  Instead, there was a gap in the record that she was required to fill.  *See Lilley*, 307 F. Supp. 3d at 160 ("Stated simply, the record lacks a useful medical opinion by any treating or examining source that addresses whether and to what extent plaintiff's mental impairments impact her ability to perform work-related functions.  As such, the ALJ was required to obtain a consultative examination and/or seek additional opinion evidence from plaintiff's treating physician.").  This error warrants remand for further proceedings.

**B.**     **Plaintiff's Remaining Arguments**

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings, and Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  June 13, 2022
         Rochester, New York

- 14 -